John E. Cutler, MT # 38764181
Leah E. Trahan, MT # 56104993
PARSONS BEHLE & LATIMER
127 East Main Street, Suite 301
Missoula, Montana 59802
Telephone: 406.317.7220
Facsimile: 406.317.7221
JCutler@parsonsbehle.com
LTrahan@parsonsbehle.com
ECF@parsonsbehle.com

*Attorneys for Plaintiff-Petitioner*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| SAMUEL ALDAZ MERAZ, Juárez, Chihuahua, Mexico,<br><br>Plaintiff-Petitioner,<br><br>vs.<br><br>JULIE ANNE FLORA, a/k/a JULIE ANNE CRIPE, Ronan, Lake County, Montana, United States,<br><br>Defendant-Respondent. | Case No.:<br><br>VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD PURSUANT TO THE HAGUE CONVENTION |

# INTRODUCTION[1]

1. Plaintiff-Petitioner Samuel Aldaz Meraz ("Petitioner" or "Aldaz") is a resident and citizen of the United Mexican States ("Mexico"). He brings this action to secure the return to Mexico of his three-year-old son D.S.A.[2] ("Child"), who has, without Aldaz's consent or acquiescence, been wrongfully removed to the United States and retained in the District of Montana by the Child's mother Defendant-Respondent Julie Anne Flora, a/k/a Julie Anne Cripe ("Respondent" or "Flora").

2. Aldaz brings this Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Convention")[3] and the International Child Abduction Remedies Act ("ICARA")[4], the federal legislation implementing the Convention in the United States.

3. The Convention entered into force between the United States of America and Mexico on October 1, 1991, and remains in force at all relevant

---

[1] To reduce expenses this Complaint is adapted from the complaint (Dkt. 1) filed in Case 4:21-cv-00520-DCN in the District of Idaho. Legal citations have been verified and language adapted to present the distinct facts in Petitioner's case and the Local Rules of the District of Montana. Language is not quoted, but attribution for the prose in significant part is made to the authors of Dkt. 1 in Case 4:21-cv-00520-DCN.

[2] Pursuant to Federal Rule of Civil Procedure 5.2(a) and District Local Rule Civ. 5.1(b)(2), the full names and birth dates of the Child are not included in this Petition and have been redacted from any supporting materials provided by Petitioner.

[3] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.A. at 98, reprinted in 51 Fed. Reg. 10493 (1986). The Convention was enacted at The Hague on October 28, 1980. The Convention is available on Westlaw at 1988 WL 411501.

[4] 22 U.S.C. §§ 9001-9011 (1995).

times.[5] The purposes of the Convention are to secure the immediate return of a child wrongfully removed or retained in any Contracting State, and to ensure that the rights of custody and access under the law of one Contracting State are respected in other Contracting States. *See* Convention, art. 1. The Convention recognizes the urgent nature of these proceedings and anticipates an expedited hearing of Convention cases. *See* Convention, art. 11. The Convention is not meant to decide the "[u]nderlying merits of a custody dispute but whether a child should be returned to a country for custody proceedings under that country's domestic law." *Papakosmas v. Papakosmas*, 483 F.3d 617, 621 (9th Cir. 2007).

4. Under the Convention, the removal or retention of a child is "wrongful" when:

>   (a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
>   (b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3.

5. In considering a petition for return, the Convention authorizes a federal district court to determine the merits of the wrongful removal or retention

---

[5] The United States and Mexico are signatories to the Hague Convention; the United States ratified the treaty on July 1, 1988, and Mexico's entry into the Convention was effective with the United States on October 1, 1991. *See* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html.

claim but does not permit the district court to consider the merits of any underlying custody dispute. *See Mozes v. Mozes*, 239 F.3d 1067,1070 (9th Cir. 2001), *modified in nonrelevant part by Monasky v. Taglieri*, 140 S. Ct. 719 (2020).

6. The United States Court of Appeals for the Ninth Circuit has instructed that a court applying Article 3 of the Convention must answer the following four questions:

> (a) When did the removal or retention at issue take place?
>
> (b) Immediately prior to the removal or retention, in which state was the child habitually resident?
>
> (c) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence?
>
> (d) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes*, 239 F.3d at 1070.

7. Under the Convention, upon receiving notice of a wrongful removal or retention in the sense of Article 3 of the Convention, "[t]he judicial or administrative authorities of the Contracting State to which the child has been removed or it which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention." Convention, art. 16.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction of courts under the Convention) and 28 U.S.C § 1331 (federal question jurisdiction).

9. Venue in this Court is proper pursuant to 22 U.S.C. § 9003(b) (petitions under the Convention) and 28 U.S.C. § 1391(b) because the Child, on information and belief, is currently located in or around Ronan or Polson, Montana.

## STATEMENT OF FACTS

10. Aldaz is the father of a three-year-old child D.S.A. Aldaz is a citizen of Mexico and Flora is a citizen of the United States of America ("United States"). The Child is a dual citizen of the United States and Mexico.

11. Aldaz was living in Juarez at the time he met Flora there in early 2017.

12. Aldaz and Flora met in February 2017, when Flora was living in Juarez. The two married in 2019. Ex. 1, Petition for Dissolution, ALDAZ000003.

13. In November 2019 their son D.S.A was born. Ex. 2, Birth Certificate United States, ALDAZ0000007; Ex. 3, Birth Certificate Mexico, ALDAZ0000009. From D.S.A.'s birth until Flora wrongfully removed D.S.A. on March 28, 2022,

D.S.A. lived with Aldaz and Flora in Ciudad Juarez, Chihuahua, Mexico ("Juarez"). *See* Ex. 1, Petition for Dissolution, ALDAZ000003.

14. From the time D.S.A. was born until his wrongful removal to the United States, Aldaz was actively engaged as D.S.A.'s parent in Juarez, working in Juarez to provide a home for his son and wife, and spending his time outside of work caring for, playing with, and watching his young son grow.

15. On Monday, March 28, 2022, Aldaz awoke early and went to work like every other day. Before he left the family home, Aldaz said goodbye to Flora and gave a kiss and hug to D.S.A., as he did every morning before work.

16. When Aldaz returned home from work, Flora and D.S.A. were not there.

17. Aldaz searched for a note or message from Flora, but did not find one. Rather, Aldaz discovered that Flora had taken all of Flora's and Child's belongings from the home, as well as many of the family's important documents.

18. Aldaz attempted to call Flora to determine where she and their son were, but his calls were sent to voicemail. Aldaz attempted to text his wife through WhatsApp, but received no immediate response.

19. Aldaz continued to send text messages through WhatsApp for the next few days, but still received no answer. Finally, on the evening of March 30, 2022, Aldaz got a message from his wife stating that she had taken their son to the

United States. Aldaz reminded Flora that she had taken their son to the United States without Aldaz's knowledge or consent. Ex. 4, WhatsApp Messages PDF, ALDAZ000013-17; Ex. 5, WhatsApp Messages Native.[6]

20. Flora has never informed Aldaz where she is living in Montana, despite Aldaz's repeated requests for this information.

21. In the weeks following March 28, 2022, Aldaz repeatedly requested Flora bring their son back to his home in Juarez, but Flora refused. Flora indicated she intended to retain D.S.A. "indefinitely" in the United States, despite Aldaz's repeated requests that D.S.A. be returned to Mexico. Ex. 4, WhatsApp Messages PDF, ALDAZ000016.

22. In a May 26, 2022, Facebook message, Flora admits that she took the child to the United States unilaterally and without Aldaz's consent. And she explains her rationale for doing so. Aldaz responded on with a Facebook message on May 27, 2022, reiterating his objections to the unilateral removal of the Child from his home in Mexico. Aldaz also addressed Flora's stated reasons for taking the child. Ex. 6, Facebook Messages PDF, ALDAZ000023; Ex. 7, Facebook Messages Native.[7]

---

[6] Due to the volume of WhatsApp message files, the relevant messages are filed herewith in PDF format as Exhibit 4. The full record of the WhatsApp messages in their native format (Exhibit 5) will be submitted to the clerk of court's office in the Missoula Division and a notice of filing will be filed in this matter pursuant to Local Rule 5.1(b)(4). Mr. Aldaz further requests this exhibit be maintained under seal and files a motion to file under seal contemporaneously herewith.

[7] Due to the volume of Facebook message files, the relevant messages are filed herewith in PDF format as Exhibit 6. The full record of the Facebook messages in their native format (Exhibit 7) will be submitted to the clerk of court's office in the Missoula Division and a notice of filing will be filed in this matter pursuant to Local Rule 5.1(b)(4). Mr. Aldaz further requests this exhibit be maintained under seal and files a motion to file under seal contemporaneously herewith.

23. Review of Flora's rationale for taking the child and Aldaz's response, set forth in the May 26th and May 27th Facebook messages, shows that the parties had been dealing with marital issues culminating in Flora's decision to separate. The messages also show that there were no allegations that the child would face any grave risk of physical or psychological injury if required to return to his habitual residence in Mexico. Indeed, there is no evidence of physical or psychological risk to the child in the parties Facebook Messages between June 29, 2020, and June 22, 2023, nor is there any evidence of physical or psychological risk to the child in the parties WhatsApp communications between March 14, 2020, and November 4, 2022. Ex. 7, Facebook Messages native; Ex. 5, WhatsApp Messages native. Instead, these messages reflect a strong relationship between Aldaz and his child.

24. Upon learning Flora had D.S.A. to the United States and did not intend to return, Aldaz immediately made efforts to secure the return of his child.

25. Aldaz started gathering information and went to the Central Authority in Mexico. However, preparing the documents necessary to seek legal return of his child was difficult, because Flora had taken all the relevant legal documents with her when she took their child to the United States. After several weeks of searching for the necessary documents and information, Aldaz was able to complete the paperwork for his Hague Return Application on May 3, 2022, with

VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD – PAGE 8

the Mexican Office of the Secretary of Foreign Affairs. Ex. 8, Hague Application, ALDAZ000033-68.

26. After submitting his Hague Application for Return to the Mexican Office of the Secretary of Foreign Affairs, the agency forwarded that application to the U.S. Department of State, Office of Child's Issues, the central authority in the U.S. for the Hague Abduction Convention.

27. Aldaz has at all times worked with the relevant authorities, including the Department of State, to the secure the return of his son through the Hauge application process.

28. As soon as Flora had been in Montana for six months, she immediately engaged in the very forum shopping the Convention was designed to present—filing a petition for dissolution of the parties' marriage in Montana's Twentieth Judicial District Court, Lake County on October 19, 2022. Ex. 1, Petition for Dissolution.

29. Along with her Petition, Flora filed a "Proposed Parenting Plan" under which she would have virtually exclusive custody of the child including the entire summer break, every holiday (including Father's day), and even on the Father's birthday. Ex. 8, Proposed Parenting Plan, ALDAZ000071-73. Aldaz would be afforded only "supervised parenting time" to be held at the CASA office in Lake County, Montana. Ex. 8, Proposed Parenting Plan, ALDAZ000071. Here

again, Flora's actions reflect the precise conduct the Convention was designed to prevent and remedy.

30. Aldaz's divorce petition identifies her address as "confidential"—continuing to conceal her precise whereabouts from the Flora. Ex 1, Petition for Dissolution, ALDAZ000002.

31. The divorce petition includes Flora's judicial admission that D.S.A. lived with both Aldaz and Flora in Ciudad de Juarez, Mexico at all times before the wrongful removal on March 28, 2022. Ex 1, Petition for Dissolution, ALDAZ000003. And there is no allegation of physical or psychological violence in the marriage. Ex 1, Petition for Dissolution.

32. To date, Flora has not served any of the divorce papers on Aldaz. It was not until Aldaz's counsel conducted a public record search that this divorce action became known. The docket does not reflect any additional proceedings on the divorce petition, beyond the initial filings.

33. From the time of removal to the present, Aldaz has persisted in his objection to D.S.A.'s removal, repeatedly demanded return of the child, and worked diligently through the legal processes to secure the return of his child.

34. Since removing D.S.A. from his habitual residence in Juarez, Mexico, Flora has unilaterally dictated when and how the child may communicate with Aldaz—severely restricting his ability to interact with his son. Aldaz has

frequently pleaded with Flora for an opportunity to speak with D.S.A. or to see D.S.A. with only sporadic response to these requests. Flora will send pictures and video clips when she pleases, she has afforded Aldaz only occasional video chats. But she has insisted that these limited communications occur at the times she deems appropriate—without respect for Aldaz's wishes or scheduling issues. These limited offers for communication are generally with little or no notice and often do not allow for reasonable communication because Flora chooses locations with limited connectivity or times of the day that are not conducive to meaningful engagement with a toddler.

35. As the father of D.S.A., Aldaz has rights of custody and care of D.S.A. under Mexican law, which maintains generally that "*Patria potestas* governs the relationship between parents and their children, conferring upon . . . parents, **jointly**, the broadest possible right over their children's care, custody, and well-being." *Rodriguez v. Sieler*, No. CV 12-167-M-DLC, 2012 WL 5430369, at *5 (D. Mont. Nov. 7, 2012) (emphasis added). This law applies in the Mexican state of Chihuaua. *Castaneda v. Gallegos*, No. 2:15-CV-0847 JCH/CG, 2015 WL 13650155, at *3 (D.N.M. Nov. 10, 2015).

36. *Patria potestas* provides that "parental authority/responsibility over children will be exerted by the father and mother ... [and] those who exert parental authority/responsibility have a right to coexist (spend time) with their children."

*Castaneda v. Gallegos*, No. 2:15-CV-0847 JCH/CG, 2015 WL 13650155, at *3 (D.N.M. Nov. 10, 2015)(citation omitted).

37. During the time since Flora's wrongful removal of D.S.A. from Mexico and wrongful retention in the United States, Flora specifically has limited the ability of Aldaz to communicate and speak with the Child and has interfered with and breached the rights of custody and care that Aldaz has concerning D.S.A. under the parental rights provided to him under the laws of Mexico.

### First Claim for Relief
(Return Remedy Under the Convention; Removal and Wrongful Retention of the Child by Flora)

38. Aldaz incorporates paragraphs 1 through 37, as fully set forth herein.

39. The Convention applies to any child who is under 16 years of age and was habitually a resident in a Contracting State immediately before being wrongfully removed and retained. Convention, art. 4. D.S.A. is currently three years old and was two years' old at the time of the wrongful removal.

40. As set forth above, in March 2022, Flora wrongfully removed and retained D.S.A. outside of D.S.A.'s habitual residence (Ciudad Juarez, Chihuahua, Mexico), within the meaning of Article 3 of the Convention, and continues to wrongfully retain the Child in the State of Montana in violation of the Convention and ICARA and despite Aldaz's repeated requests and efforts to have D.S.A. returned to Mexico.

41. The wrongful removal occurred on or around March 28, 2022, and the wrongful retention commenced a few days later, when Flora through text messages refused to return D.S.A. to his habitual residence in Ciudad Juarez, Chihuahua, Mexico.

42. As set forth above, Aldaz immediately made efforts with the Mexican Government to recover the custody, care, and cohabitation with D.S.A. But Flora had absconded with D.S.A. to the United States outside the jurisdiction of the agencies in Mexico. Moreover, various factors, such as Flora's taking of the relevant documents containing information to complete the Hague application, significant lethargy and delay in the actions of the authorities involved in these proceedings, and Aldaz's lack of monetary resources have not allowed him to advance or satisfactorily complete such purpose.

43. Upon information and belief, Flora is living somewhere in Polson or Ronan Montana. Her exact address continues to be wrongfully concealed from the Aldaz.

44. Upon information and belief, Flora's parents continue to reside at 45717 Round Butte Road, Ronan, Montana 59864, and it is believed that Flora spends significant time at this location visiting her parents with D.S.A.

45. Flora absconded with D.S.A. to the United States while Aldaz was at work and without Aldaz's permission or knowledge.

46. Flora's removal of D.S.A. outside of his habitual residence in Ciudad Juarez, Mexico and retention of D.S.A. in the United States without Aldaz's consent or acquiescence is contrary to the Convention and Aldaz's rights of custody and care under Mexican domestic law as D.S.A.'s father.

47. Specifically, Flora's removal and retention of D.S.A. outside of Mexico is wrongful within the meaning of Article 3 of the Convention because:

(a) It is in violation of Aldaz's rights of care and custody as established by Mexican law;

(b) At the time of Flora's removal of D.S.A. from Mexico and Flora's wrongful retention of the child outside of Mexico, Aldaz was actually exercising his rights of custody and care within the meaning of Articles 3 and 5 of the Convention and, but for Flora's removal and wrongful retention of D.S.A., Aldaz would have continued to exercise those rights; and

(c) D.S.A. was habitually resident in Mexico within the meaning of Article 3 of the Convention immediately before his removal and wrongful retention outside of Mexico by Flora.

## Relief Requested

WHEREFORE, Petitioner Samuel Aldaz Meraz respectfully requests the following relief:

A. An order pursuant to and consistent with Article 12 of the Convention in favor of Aldaz and ordering the return of D.S.A. to his habitual residence in Ciudad de Juarez within the United Mexican States;

B. An order requiring that Flora pay Aldaz's expenses and costs, including travel expenses to return D.S.A. to his habitual residence in Mexico and

reasonable attorney fees pursuant to Article 26 of the Convention and 22 U.S.C. § 9007(b)(3);

C. If this matter is resolved through a default judgment Aldaz asserts that the reasonable attorney fees and costs (including translation of documents) for preparation of this petition, motion for temporary restraining order, motion to consolidate the hearing on the merits with the preliminary injunction hearing, and supporting filings is $18,000;

D. A temporary restraining order and preliminary injunction against Flora ordering her not to leave the State of Montana; and

E. Such further relief as is just and that this Court may require.

DATED August 22, 2023.

/s/ John E. Cutler
John E. Cutler
PARSONS BEHLE & LATIMER
Attorneys for Plaintiff-Petitioner

## VERIFICATION

I, Samuel Aldaz Meraz, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff-Petitioner in the action set out in the foregoing Verified Complaint and Petition for Return of Child Pursuant to the Hague Convention ("Complaint and Petition"), that I have read the Complaint and Petition and Exhibits attached thereto, know the contents thereof, and that the facts asserted therein are true and correct to the best of my knowledge.

EXECUTED this 22 day of August 2023 at Ciudad Juarez, Chihuahua, Mexico.

_____
Samuel Aldaz Meraz